John M. Desmarais (SBN 320875)
jdesmarais@desmaraisllp.com
**DESMARAIS LLP**
101 California Street
Suite 3000
San Francisco, CA 94111
Telephone: (415) 573-1900

*Attorney for Apple Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLE INC., | CASE NO. |
| Plaintiff, | **APPLE'S COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NOS. 7,167,703, 7,613,446, 8,195,087, 9,585,003, 9,621,699, AND 10,025,552** |
| v. | |
| CLOUD CONTROLS LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

- 1 -

Plaintiff Apple Inc. ("Apple"), by and through its undersigned counsel, files this Complaint for Declaratory Judgment of Noninfringement of U.S. Patent Nos. 7,167,703 (the "'703 Patent," attached as **Exhibit 1**), 7,613,446 (the "'446 Patent," attached as **Exhibit 2**), 8,195,087 (the "'087 Patent," attached as **Exhibit 3**), 9,585,003 (the "'003 Patent," attached as **Exhibit 4**), 9,621,699 (the "'699 Patent," attached as **Exhibit 5**), and 10,025,552 (the "'552 Patent," attached as **Exhibit 6**) (together, the "Patents-in-Suit"), and in support of its Complaint alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for a declaratory judgment of noninfringement of the Patents-in-Suit against Defendant Cloud Controls LLC ("Cloud Controls") arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the patent laws of the United States, Title 35 of the United States Code.

2.      Apple has been a pioneer in the design and manufacture of consumer electronics for more than four decades. Apple's innovations have led to some of the most iconic products on the market during that time span, including the Apple iPhone, iPad, AirPods, and iCloud. For its efforts, Apple has been awarded thousands of patents by the United States Patent and Trademark Office ("USPTO"), which protect the technologies underlying Apple's groundbreaking inventions. Apple requests this relief because Cloud Controls claims that certain Apple products and/or services infringe the Patents-in-Suit.

3.      On December 18, 2025, Cloud Controls sent Apple a letter via certified mail and FedEx priority overnight mail, courtesy of Apple's process agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201. In that letter, Cloud Controls represented that it was the "owner" of certain patents "relating to many aspects of mobile devices and entertainment products." Cloud Controls also identified each of the Patents-in-Suit, and alleged that certain information "indicate[d] that the Patents cover" the following Apple products, functionalities, and services (hereinafter, the "Accused Products"):

APPLE'S COMPLAINT FOR DECLARATORY JUDGMENT

(a) **iPhone** (including, but not limited to, the original iPhone, iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, iPhone 5, iPhone 5S, iPhone 5C, iPhone 6, iPhone 6 Plus, iPhone 6S, iPhone 6S Plus, iPhone SE (1st gen), iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone X, iPhone XR, iPhone XS, iPhone XS Max, iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, iPhone SE (2nd gen), iPhone 12, iPhone 12 mini, iPhone 12 Pro, iPhone 12 Pro Max, iPhone 13, iPhone 13 mini, iPhone 13 Pro, iPhone 13 Pro Max, iPhone SE (3rd gen), iPhone 14, iPhone 14 Plus, iPhone 14 Pro, iPhone 14 Pro Max, iPhone 15, iPhone 15 Plus, iPhone 15 Pro, iPhone 15 Pro Max, iPhone 16, iPhone 16 Plus, iPhone 16 Pro, iPhone 16 Pro Max, iPhone 16e, iPhone 17, iPhone 17 Pro, iPhone 17 Pro Max, and iPhone Air.);

(b) **iPad** (including, but not limited to, iPad (5th Gen.), iPad (6th Gen.), iPad (7th Gen.), iPad (8th Gen.), iPad (9th Gen.), iPad Mini 2, iPad Mini 3, iPad Mini 4, iPad Mini (5th Gen), iPad Mini (6th Gen), iPad Mini (7th Gen), iPad Air, iPad Air 2, iPad Air (3rd Gen.), iPad Air (4th Gen.), iPad Air (5th Gen.), iPad Air (6th Gen.), iPad Air 7th Gen.), iPad Pro (1st Gen.), iPad Pro (2nd Gen.), iPad Pro (3rd Gen.), iPad Pro (4th Gen.), iPad Pro (5th Gen.), iPad Pro (6th Gen.), iPad Pro (7th Gen.), and iPad Pro (8th Gen));

(c) **AirPods** (including, but not limited to AirPods 1, AirPods 2, AirPods 3, AirPods 4, AirPods Pro 1, AirPods Pro 2, AirPods Pro 3, and AirPods Max);

(d) **HomePod** (including, but not limited to, HomePod (1st Gen.), HomePod (2nd Gen.), and HomePod mini);

(e) **Messaging**;

(f) **AirPlay**;

(g) **AirDrop**;

(h) **Beats Wireless/Bluetooth Earphones and Earbuds** (including, but not limited to, Beats Solo Pro, Beats Solo 3 Wireless, Beats Studio 3 Wireless, Beats Studio Pro, Beats Solo 4, Beats X Wireless, Powerbeats Pro, Powerbeats, Beats Flex, Beats Studio Buds, Beats Fit Pro, Beats Studio Buds Plus, Powerbeats Pro 2, and Powerbeats Pro True, Beats Solo Buds)

(i) **Beats Wireless/Bluetooth/Smart Speakers** (including, but not limited to, Beats Pill and Beats Pill+); and

(j) the aforementioned products and functionality in conjunction with online services such as iCloud (including, but not limited to iCloud and iCloud+).

Cloud Controls also stated that it was "willing to provide Apple with a nonexclusive license" to the Patents-in-Suit.    The December 18, 2025 letter from Cloud Controls to Apple is attached as **Exhibit 7**.

4.    On December 23, 2025, an in-house attorney on Apple's IP Transactions team, Jacob Anderson, responded to Cloud Controls' letter, requesting claim charts or other support for

1    Cloud Controls' infringement assertions to help with Apple's assessment of Cloud Controls'

2    allegations.  Mr. Anderson is based in the San Francisco Bay Area.

3         5.    Over the following two weeks, Apple and Cloud Controls exchanged emails

4    concerning Cloud Controls' patent infringement assertions.

5         6.    As was indicated in Jacob Anderson's December 23, 2025 letter, and in his signature

6    on the email correspondence, Mr. Anderson's corporate address is One Apple Park Way, Cupertino,

7    CA 95014.

8         7.    Cloud Controls has also filed patent infringement lawsuits against Verizon

9    Communications, Inc. and Cellco Partnership, d/b/a Verizon Wireless (together, "Verizon"); T-

10   Mobile USA, Inc. ("T-Mobile"); and AT&T Inc., AT&T Enterprises, LLC, AT&T Mobility LLC,

11   AT&T Mobility II LLC, and AT&T Services, Inc. (together, "AT&T"), in which Cloud Controls

12   accused Verizon, T-Mobile, and AT&T of infringing the Patents-in-Suit.  *Cloud Controls LLC v.*

13   *Verizon Commc'ns, Inc.*, No. 2:25-cv-1249 (E.D. Tex. Dec. 23, 2025); *Cloud Controls LLC v. T-*

14   *Mobile USA, Inc.*, No. 2:25-cv-1248 (E.D. Tex. Dec. 23, 2025); *Cloud Controls LLC v. AT&T Inc.*,

15   No. 2:25-cv-1246 (E.D. Tex. Dec. 23, 2025) (collectively, the "Carrier Cases").  In the Carrier

16   Cases, Cloud Controls alleged that Apple iPhones, iPads, AirPods, iMessage, AirDrop, AirPlay,

17   and other products and functionalities satisfy certain claim limitations of the Patents-in-Suit.  *Id.*

18   True and correct copies of Cloud Controls' complaints and relevant claim charts from the Carrier

19   Cases are attached hereto as **Exhibits 8 through 10**.

20        8.    In the Carrier Cases, Cloud Controls attached claim charts as exhibits G through L

21   to each complaint, purportedly mapping the limitations of various claims of the Patents-in-Suit to

22   Apple's iPhone, iPad, and AirPods devices (collectively, the "Apple Accused Devices"), as well as

23   Apple's iCloud, iCloud Drive, iCloud Backup, Messages, AirDrop, and AirPlay software

24   (collectively, the "Apple Accused Software") and/or other products or services.  The claim charts

25   attached as exhibits to each complaint in the Carrier Cases are substantially the same.

26        9.    Each complaint in the Carrier Cases also includes a section with the heading

27   "General Allegations of Patent Infringement" and identifies various Apple products as the

28

APPLE'S COMPLAINT FOR DECLARATORY JUDGMENT

1  "Accused Products," including: iPhones, iPads, AirPods, Beats, HomePod mini, and Beats

2  speakers.

3      10.    Based on Cloud Controls' allegations of infringement of the Patents-in-Suit by

4  various Apple products and functionalities—both in its correspondence with Apple and in its

5  complaints in the Carrier Cases—an actual and justiciable controversy exists between Apple and

6  Cloud Controls.

7                                    **THE PARTIES**

8      11.    Plaintiff Apple is a California corporation with a principal place of business at One

9  Apple Park Way, Cupertino, California 95104.  Apple has over 35,000 employees who work at or

10  near its headquarters in Cupertino, California.

11      12.    On information and belief, and based on the statements Cloud Controls made in the

12  complaints in the Carrier Cases, Cloud Controls purports to be a limited liability company

13  organized under the laws of Texas, with its principal place of business at 5900 Balcones Drive,

14  Suite 100, Austin, TX 78731.

15                              **JURISDICTIONAL STATEMENT**

16      13.    This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et*

17  *seq.*, and under the patent laws of the United States, Title 35 of the United States Code.

18      14.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331,

19  1338, 2201, and 2202.  Jurisdiction is also proper under 28 U.S.C. § 1332 because Apple and Cloud

20  Controls are citizens of different states, and the value of the controversy exceeds $75,000.00.

21      15.    Pursuant to 28 U.S.C. § 2201, this Court can provide the declaratory relief sought

22  in Apple's Complaint because an actual case or controversy exists between Apple and Cloud

23  Controls.  An actual case or controversy exists at least because Apple does not infringe and has not

24  infringed any claims of the Patents-in-Suit, and Cloud Controls has accused Apple's products and

25  services of infringing the Patents-in-Suit in both correspondence with Apple and in the Carrier

26  Cases.

27      16.    This Court has personal jurisdiction over Cloud Controls because Cloud Controls

28  has engaged in actions in the Northern District of California ("NDCA") that have established

1  sufficient minimum contacts.    Further, the exercise of personal jurisdiction based on Cloud

2  Controls' contacts does not offend traditional notions of fairness and substantial justice.

3       17.    On December 18, 2025, Cloud Controls sent Apple a letter in which Cloud Controls

4  represented that it was the "owner" of certain patents "relating to many aspects of mobile devices

5  and entertainment products."  On information and belief, Cloud Controls knew at the time that

6  Apple is based in Cupertino, California.  In the letter, Cloud Controls also identified each of the

7  Patents-in-Suit, and alleged that certain information "indicate[d] that the Patents cover" a litany of

8  Apple products.  Cloud Controls also stated that it was "willing to provide Apple with a

9  nonexclusive license" to the Patents-in-Suit.  The December 18, 2025 letter from Cloud Controls

10  to Apple is attached as Exhibit 7.

11       18.    On December 23, 2025, an in-house attorney at Apple, Jacob Anderson, who is

12  based in the San Francisco Bay Area, responded to Cloud Controls' letter, requesting claim charts

13  or other support for Cloud Controls' infringement assertions to help with Apple's assessment of

14  Cloud Controls' allegations.  Mr. Anderson's letter to Cloud Controls listed his corporate address,

15  One Apple Park Way, Cupertino, CA 95014.

16       19.    Between December 23, 2025 and January 6, 2026, after Mr. Anderson sent his

17  December 23, 2025 letter to Cloud Controls' counsel, Cloud Controls and Apple exchanged

18  multiple emails concerning Cloud Controls' patent assertions against Apple.  Mr. Anderson's email

19  signature listed his corporate address, One Apple Park Way, Cupertino, CA 95014.

20       20.    Thus, Cloud Controls knowingly engaged in assertions of the Patents-in-Suit with

21  Apple and its employee in the Northern District of California.

22       21.    The '703 patent issued from U.S. Patent Application No. 10/255,860, filed on

23  September 25, 2002.  The '703 patent purports to claim priority to U.S. Provisional Application

24  No. 60/325,094 filed on September 25, 2001.

25       22.    The '446 patent issued from U.S. Patent Application No. 10/550,925, filed on March

26  26, 2004.  The '446 patent purports to claim priority to U.S. Provisional Application No.

27  60/458,314 ("the '314 Provisional") filed on March 28, 2003.

28

23.    The '087 patent issued from U.S. Patent Application No. 13/158,269, filed on June 10, 2011.  The '087 patent purports to claim priority to U.S. Patent Application No. 11/971,062 ("the '062 Application") filed on January 8, 2008, now U.S. Patent No. 7,938,612 and U.S. Provisional Application No. 60/884,004 ("the '004 Provisional"), filed on January 8, 2007.

24.    The '003 patent issued from U.S. Patent Application No. 14/463,601, filed on August 19, 2014.  The '003 patent purports to claim priority to U.S. Patent Application No. 13/020,651 ("the '651 Application") filed on February 3, 2011, now U.S. Patent No. 8,843,121 and U.S. Patent Application No. 11/158,308 ("the '308 Application") filed on June 21, 20025, now U.S. Patent No. 7,904,065.  It also purports to claim priority to U.S. Provisional Application No. 60/581,864 ("the '864 Provisional"), filed on June 21, 2004.

25.    The '699 patent issued from U.S. Patent Application No. 14/453,571 ("the '571 Application"), filed on August 6, 2014.  The '699 patent purports to claim priority to U.S. Patent Application No. 10/531,162 ("the '162 Application") filed on October 14, 2003, now U.S. Patent No. 8,838,183 and U.S. Provisional Application No. 60/418,920 ("the '920 Provisional"), filed on October 15, 2002.

26.    The '552 patent issued from U.S. Patent Application No. 14/463,611 ("the '611 Application"), filed on August 19, 2014.  The '552 patent also purports to claim priority to U.S. Patent Application No. 11/971,058 ("the '058 Application") filed on January 8, 2008, now U.S. Patent No. 8,843,222 and U.S. Provisional Application No. 60/883,996 ("the '996 Provisional"), filed on January 8, 2007.

27.    The '703, '446, '087, '003, '699, and '552 patents were filed and prosecuted by the law firm Schwabe Williamson & Wyatt, including by attorneys based in Mountain View, California (in the Northern District of California).

28.    The '314, '864, and '920 Provisional Applications and the '062, '651, '308, '162, and '058 Applications were also filed and prosecuted by the law firm Schwabe, Williamson & Wyatt, P.C., including by attorneys based in Mountain View, California.  The '004 and '996 Provisional Applications were filed and prosecuted by the law firm Perkins Coie LLP, including by attorneys based in Palo Alto, California (in the Northern District of California).

29.     To enforce its patent rights, Cloud Controls has consistently used the law firm Williams Simons & Landis PC, including at least one attorney admitted in California and in this District, including for the following cases:

- *Cloud Controls LLC v. AT&T Inc.*, No. 2:25-cv-1246 (E.D. Tex. Dec. 23, 2025)

- *Cloud Controls LLC v. T-Mobile USA, Inc.*, No. 2:25-cv-1248 (E.D. Tex. Dec. 23, 2025)

- *Cloud Controls LLC v. Verizon Communications, Inc.*, No. 2:25-cv-1249 (E.D. Tex. Dec. 23, 2025)

- *Cloud Controls LLC v. OnePlus Technology (Shenzen) Co.*, No. 2:25-cv-1247 (E.D. Tex. Dec. 23, 2025)

- *Cloud Controls LLC v. Samsung Electronics Co.*, No. 2:25-cv-925 (E.D. Tex. Nov. 13, 2024)

30.     Cloud Controls has directed enforcement of its patent rights at California and this District through the Carrier Cases.  In each of the Carrier Cases, Cloud Controls filed five claim charts alleging infringement exclusively by Apple's products.  Additionally, in each of the Carrier Cases, Cloud Controls filed one claim chart alleging infringement by products manufactured by Sonos, a company headquartered in Goleta, California.  In the Carrier Cases, Cloud Controls has also identified multiple California companies and their products that allegedly infringe the Patents-in-Suit, including but not limited to Google LLC and Speck Products, both of which are headquartered in this District.

31.     On information and belief, Cloud Controls has also entered into a nonexclusive license for the Patents-in-Suit with Samsung Electronics Co., a large company that operates nation-wide, including in California and in this District.

32.     A substantial portion of the research and development for the Accused Products occurred at Apple's headquarters in Cupertino, California (in the Northern District of California). Any relevant financial and licensing documentation and personnel are also primarily located in Apple's Cupertino headquarters.

1     33.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Apple's claim occurred in this District, and because Cloud Controls is subject to personal jurisdiction here.

34.    An immediate, real, and justiciable controversy exists between Apple and Cloud Controls as to whether Apple is infringing or has infringed the Patents-in-Suit.

### DIVISIONAL ASSIGNMENT

35.    This is an Intellectual Property Rights Action subject to assignment on a district-wide basis pursuant to Civil L.R. 3-2(c) and 3-5(b).

### APPLE INDEPENDENTLY DEVELOPED THE ACCUSED TECHNOLOGY

36.    Apple was founded in 1976, and is world-renowned for creating innovative products that people love.  Apple produces those products through its significant investment in and dedication to research and development and product design.

37.    Apple created the accused technologies.  For example, Apple announced the first iPhone by 2007, and launched its first iPhone by June 2007.  *See* https://www.apple.com/newsroom/2007/01/09Apple-Reinvents-the-Phone-with-iPhone/; https://www.verizon.com/articles/Smartphones/milestones-in-history-of-apple-iphone/.  Apple announced a text messaging application by 2007 and launched its text messaging application by June 2007 with the release of the first iPhone.  *See* https://www.apple.com/newsroom/2007/01/09Apple-Reinvents-the-Phone-with-iPhone/; https://www.verizon.com/articles/Smartphones/milestones-in-history-of-apple-iphone/.  Apple announced the first iPad by 2010, and launched its first iPad by April 2010.  *See* https://www.apple.com/newsroom/2010/01/27Apple-Launches-iPad/; https://www.ign.com/articles/all-ipad-release-dates-in-order.  Apple announced the first AirPods by 2016, and launched the first AirPods by December 2016.  *See* https://www.apple.com/newsroom/2016/09/apple-reinvents-the-wireless-headphones-with-airpods/; https://www.apple.com/newsroom/2016/12/apple-airpods-are-now-available/.  Apple announced iCloud by 2011, and launched iCloud by October 2011.  *See* https://www.apple.com/newsroom/2011/06/06Apple-Introduces-iCloud/;

1   https://www.apple.com/newsroom/2011/10/04Apple-to-Launch-iCloud-on-October-12/.    Apple

2   announced   AirDrop   by   2011,   and   launched   AirDrop   by   July   2011.    *See*

3   https://www.apple.com/newsroom/2011/06/06Mac-OS-X-Lion-With-250-New-Features-

4   Available-in-July-From-Mac-App-Store/.    Apple announced AirPlay by 2010, and launched

5   AirPlay   by   November   2010,   with   the   release   of   iOS   4.2.    *See*

6   https://www.apple.com/newsroom/2010/11/22Apples-iOS-4-2-Available-Today-for-iPad-iPhone-

7   iPod-touch/.

8       38.    Apple engineers who work on the accused technologies are based in Cupertino,

9   California.

10      39.    Because documents about Apple's products and services, including technical

11  documents and source code, are created and maintained by the employees working on those

12  products and services, such documents are primarily created and maintained in Northern California.

13                              **APPLE DOES NOT INFRINGE THE PATENTS-IN-SUIT**

14      40.    The Apple Accused Devices and Apple Accused Software do not directly or

15  indirectly infringe any claim of the Patents-in-Suit, literally or under the doctrine of equivalents.

16      41.    No third party infringes any claim of the Patents-in-Suit by using the Apple Accused

17  Devices or Apple Accused Software.  Apple has not caused, directed, requested, or facilitated any

18  such infringement, much less with specific intent to do so.  The Apple Accused Devices and Apple

19  Accused Software are not designed for use in any combination that infringes any claim of the

20  Patents-in-Suit.  To the contrary, each has substantial uses that do not infringe any claim of the

21  Patents-in-Suit.

22                                           **FIRST COUNT**
                            **(Declaration of Noninfringement of U.S. Patent No. 7,167,703)**

23      42.    Apple restates and incorporates by reference the allegations in paragraphs 1 through

24  41 of this Complaint as if fully set forth herein.

25      43.    Cloud Controls claims to own all rights, title, and interest in and under the '703

26  Patent.  The '703 patent is titled "Wireless Mobile Image Messaging."  The '703 Patent issued on

27  January 23, 2007 from U.S. Patent Application No. 10/255,860, filed on September 25, 2002.  The

28  '703 Patent lists Tyrol R. Graham, Eric J. Hull, and Jonathan O. Nelson as inventors and Wildseed,

1  Ltd. as the initial, sole assignee.  A true and correct copy of the '703 Patent is attached hereto as

2  Exhibit 1.

3      44.    Apple does not directly or indirectly infringe any claim of the '703 Patent, either

4  literally or under the doctrine of equivalents.  For example, Claim 1 of the '703 Patent recites: "In

5  a wireless mobile device, a method of operation: facilitating a user of the wireless mobile device in

6  selecting a first recipient for a first image message, the first recipient being a user of a first other

7  wireless mobile device and the first image message graphically conveying information about the

8  user of the wireless mobile device; facilitating the user of the wireless mobile device in selecting

9  the first image message from a first plurality of image messages; and transmitting a selected one of

10  the selected first image message and a first identifier of the selected first image message from the

11  wireless mobile device to the first other wireless mobile device of the first selected recipient to

12  cause the selected first image message to be conveyed to the first selected recipient."

13      45.    Apple does not infringe Claim 1 of the '703 Patent at least because Apple's iPhones

14  and iPads do not meet or embody at least the following limitations as used in the claimed inventions:

15  "facilitating a user of the wireless mobile device in selecting a first recipient for a first image

16  message, the first recipient being a user of a first other wireless mobile device and the first image

17  message graphically conveying information about the user of the wireless mobile device;"

18  "facilitating the user of the wireless mobile device in selecting the first image message from a first

19  plurality of image messages;" and "transmitting a selected one of the selected first image message

20  and a first identifier of the selected first image message from the wireless mobile device to the first

21  other wireless mobile device of the first selected recipient to cause the selected first image message

22  to be conveyed to the first selected recipient."

23      46.    No third party infringes any claim of the '703 Patent by using the Apple Accused

24  Devices or Apple Accused Software.  Apple has not caused, directed, requested, or facilitated any

25  such infringement, much less with specific intent to do so.  Apple had no knowledge of the '703

26  Patent before December 18, 2025, nor any knowledge of alleged infringement of the '703 Patent

27  by the Apple Accused Devices or Apple Accused Software, before Cloud Controls filed the Carrier

28  Cases.  For at least the reasons explained above, the Apple Accused Devices and Apple Accused

Software and the use of the Apple Accused Devices and Apple Accused Software do not directly infringe the '703 Patent. The Apple Accused Devices and Apple Accused Software are not designed for use in any combination which infringes any claim of the '703 Patent. To the contrary, each has substantial uses that do not infringe any claim of the '703 Patent and are not accused by Cloud Controls of infringing the '703 Patent. For example, the Apple Accused Devices can be used for phone calls, texts, browsing the Internet, and streaming content.

47.     Thus, there exists an actual controversy between Apple and Cloud Controls with respect to Apple's alleged infringement of the '703 Patent. Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '703 Patent.

48.     Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '703 Patent.

## SECOND COUNT
### (Declaration of Noninfringement of U.S. Patent No. 7,613,446)

49.     Apple restates and incorporates by reference the allegations in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

50.     Cloud Controls claims to own all rights, title, and interest in and under the '446 Patent. The '446 Patent is titled "Wireless Mobile Phone With Authenticated Mode of Operation Including Finger Print Based Authentication." The '446 Patent issued on November 3, 2009 from U.S. Patent Application No. 10/550,925, filed on March 26, 2004. The '446 Patent lists G. Eric Engstrom and Peter Zatloukal as inventors and Varia, LLC as the initial, sole assignee. A true and correct copy of the '446 Patent is attached hereto as Exhibit 2.

51.     Apple does not directly or indirectly infringe any claim of the '446 Patent, either literally or under the doctrine of equivalents. For example, Claim 8 of the '446 Patent recites: "A method comprising: sensing by an apparatus activation of a power on button by a user; receiving by the apparatus, through said activation, finger print input from the user, the power on button including input mechanism for the user to input the user's finger print; processing by the apparatus the sensed interactions into output signals indicating the received finger print input; authenticating by the apparatus the user based on at least the output signals; operating by the apparatus a plurality

of components of the apparatus in a first mode, wherein a first plurality of user functions are available while the operating the plurality of components in the first mode, if the user is not successfully authenticated; operating by the apparatus, the plurality of components in a second mode, wherein a second plurality of user functions are available while the operating the plurality of components in the second mode, if the user is successfully authenticated; and switching back by the apparatus from the second mode to the first mode responsive to a user instruction; wherein the second plurality of user functions comprising at least one or more of the first plurality of user functions."

52.    Apple does not infringe Claim 8 of the '446 Patent at least because the Apple Accused Devices and Apple Accused Software do not meet or embody at least the following limitations as used in the claimed inventions: "operating by the apparatus a plurality of components of the apparatus in a first mode, wherein a first plurality of user functions are available while the operating the plurality of components in the first mode, if the user is not successfully authenticated;" "operating by the apparatus, the plurality of components in a second mode, wherein a second plurality of user functions are available while the operating the plurality of components in the second mode, if the user is successfully authenticated;" "switching back by the apparatus from the second mode to the first mode responsive to a user instruction;" and "wherein the second plurality of user functions comprising at least one or more of the first plurality of user functions."

53.    No third party infringes any claim of the '446 Patent by using the Apple Accused Devices or Apple Accused Software.  Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  Apple had no knowledge of the '446 Patent before December 18, 2025, nor any knowledge of alleged infringement of the '446 Patent by the Apple Accused Devices or Apple Accused Software, before Cloud Controls filed the Carrier Cases.  For at least the reasons explained above, the Apple Accused Devices and Apple Accused Software and the use of the Apple Accused Devices and Apple Accused Software do not directly infringe the '446 Patent.  The Apple Accused Devices and Apple Accused Software are not designed for use in any combination which infringes any claim of the '446 Patent.  To the contrary, each has substantial uses that do not infringe any claim of the '446 Patent and are not accused by

1  Cloud Controls of infringing the '446 Patent.  For example, the Apple Accused Devices can be

2  used for phone calls, texts, browsing the Internet, and streaming content.

3      54.    Thus, there exists an actual controversy between Apple and Cloud Controls with

4  respect to Apple's alleged infringement of the '446 Patent.  Accordingly, declaratory judgment is

5  appropriate and necessary to determine the parties' respective rights regarding the '446 Patent.

6      55.    Apple seeks a judicial declaration that Apple does not directly or indirectly infringe

7  any claim of the '446 Patent.

8  **THIRD COUNT**
   **(Declaration of Noninfringement of U.S. Patent No. 8,195,087)**

9      56.    Apple restates and incorporates by reference the allegations in paragraphs 1 through

10  41 of this Complaint as if fully set forth herein.

11      57.    Cloud Controls claims to own all rights, title, and interest in and under the '087

12  Patent.  The '087 Patent is titled "Controlling of Wireless Connection of a Portable Device

13  Including an Illuminating Component or Switch."  The '087 Patent issued on June 5, 2012 from

14  U.S. Patent Application No. 13/158,269, filed on June 10, 2011.  The '087 Patent lists Jonathan

15  Nelson and David Schultz as inventors and Varia Holdings LLC as the initial, sole assignee.  A true

16  and correct copy of the '087 Patent is attached hereto as Exhibit 3.

17      58.    Apple does not directly or indirectly infringe any claim of the '087 Patent, either

18  literally or under the doctrine of equivalents.  For example, Claim 1 of the '087 Patent recites: "A

19  system for connecting a portable media player with a wireless communications network, the system

20  comprising: an actuator located on the portable media player; a wireless connection component in

21  communication with the actuator, the wireless connection component configured to search for

22  available wireless networks, to detect one or more available wireless networks, and to display an

23  indication of one or more of the one or more available wireless networks to a user when the wireless

24  connection component detects the selection of the actuator by a user during a period when the

25  portable media player is not connected to a wireless network; and an illumination component

26  associated with the actuator, wherein the illumination component is configured to indicate a

27  communications state of the wireless connection component via a mode of illumination."

28

14

59.     Apple does not infringe Claim 1 of the '087 Patent at least because the Apple Accused Devices and Apple Accused Software do not meet or embody at least the following limitations as used in the claimed inventions: "an actuator located on the portable media player;" "a wireless connection component in communication with the actuator, the wireless connection component configured to search for available wireless networks, to detect one or more available wireless networks, and to display an indication of one or more of the one or more available wireless networks to a user when the wireless connection component detects the selection of the actuator by a user during a period when the portable media player is not connected to a wireless network;" and "an illumination component associated with the actuator, wherein the illumination component is configured to indicate a communications state of the wireless connection component via a mode of illumination."

60.     No third party infringes any claim of the '087 patent by using the Apple Accused Devices or Apple Accused Software.  Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  Apple had no knowledge of the '087 Patent before December 18, 2025, nor any knowledge of alleged infringement of the '087 Patent by the Apple Accused Devices or Apple Accused Software, before Cloud Controls filed the Carrier Cases.  For at least the reasons explained above, the Apple Accused Devices and Apple Accused Software and the use of the Apple Accused Devices and Apple Accused Software do not directly infringe the '087 Patent.  The Apple Accused Devices and Apple Accused Software are not designed for use in any combination which infringes any claim of the '087 Patent.  To the contrary, each has substantial uses that do not infringe any claim of the '087 Patent and are not accused by Cloud Controls of infringing the '087 Patent.  For example, the Apple Accused Devices can be used for phone calls, texts, browsing the Internet, and streaming content.

61.     Thus, there exists an actual controversy between Apple and Cloud Controls with respect to Apple's alleged infringement of the '087 Patent.  Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '087 Patent.

62.     Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '087 Patent.

**FOURTH COUNT**
**(Declaration of Noninfringement of U.S. Patent No. 9,585,003)**

63.     Apple restates and incorporates by reference the allegations in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

64.     Cloud Controls claims to own all rights, title, and interest in and under the '003 Patent.  The '003 Patent is titled "Serving Data/Applications From a Wireless Mobile Phone."  The '003 Patent issued on February 28, 2017 from U.S. Patent Application No. 14/463,601, filed on August 19, 2014.  The '003 Patent lists G. Eric Engstrom, Peter Zatloukal, Guy David-Byron Shefner, and Paul R. Nash as inventors and Varia Holdings LLC as the initial, sole assignee.  A true and correct copy of the '003 Patent is attached hereto as Exhibit 4.

65.     Apple does not directly or indirectly infringe any claim of the '003 Patent, either literally or under the doctrine of equivalents.  For example, Claim 1 of the '003 Patent recites: "A method for providing access to data or applications from a mobile device, the method comprising: receiving, by the mobile device, a message from a first computing device notifying the mobile device to establish a data connection to a data network, wherein the messaged is received from the first computing device after a determination by the first computing device that a data connection between the mobile device and the data network has not been previously established, and wherein the determination by the first computing device is performed in response to the first computing device receiving a request, or a notification of a request, from a second computing device, the request being to resolve a identifier associated with the mobile device, wherein the identifier is for locating the data or application on the mobile device; and establishing, by the mobile device, the data connection with the data network in accordance with a data communication protocol."

66.     Apple does not infringe Claim 1 of the '003 Patent at least because the Apple Accused Devices and Apple Accused Software do not meet or embody at least the following limitations as used in the claimed inventions: "wherein the message is received from the first computing device after a determination by the first computing device that a data connection between the mobile device and the data network has not been previously established" and "wherein the determination by the first computing device is performed in response to the first computing

device receiving a request, or a notification of a request, from a second computing device, the request being to resolve a identifier associated with the mobile device, wherein the identifier is for locating the data or application on the mobile device."

67.     No third party infringes any claim of the '003 patent by using the Apple Accused Devices or Apple Accused Software.  Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so.  Apple had no knowledge of the '003 Patent before December 18, 2025, nor any knowledge of alleged infringement of the '003 Patent by the Apple Accused Devices or Apple Accused Software, before Cloud Controls filed the Carrier Cases.  For at least the reasons explained above, the Apple Accused Devices and Apple Accused Software and the use of the Apple Accused Devices and Apple Accused Software do not directly infringe the '003 Patent.  The Apple Accused Devices and Apple Accused Software are not designed for use in any combination which infringes any claim of the '003 Patent.  To the contrary, each has substantial uses that do not infringe any claim of the '003 Patent and are not accused by Cloud Controls of infringing the '003 Patent.  For example, the Apple Accused Devices can be used for phone calls, texts, browsing the Internet, and streaming content.

68.     Thus, there exists an actual controversy between Apple and Cloud Controls with respect to Apple's alleged infringement of the '003 Patent.  Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '003 Patent.

69.     Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '003 Patent.

**FIFTH COUNT**
**(Declaration of Noninfringement of U.S. Patent No. 9,621,699)**

70.     Apple restates and incorporates by reference the allegations in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

71.     Cloud Controls claims to own all rights, title, and interest in and under the '699 Patent.  The '699 Patent is titled "Mobile Digital Communication/Computing Device Having a Context Sensitive Audio System."  The '699 Patent issued on April 11, 2017 from U.S. Patent Application No. 14/453,571, filed on August 6, 2014.  The '699 Patent lists Peter Zatloukal and

1    Eric Engstrom as inventors and Varia Holdings LLC as the initial, sole assignee. A true and correct

2    copy of the '699 Patent is attached hereto as Exhibit 5.

3         72.     Apple does not directly or indirectly infringe any claim of the '699 Patent, either

4    literally or under the doctrine of equivalents. For example, Claim 10 of the '699 Patent recites: "A

5    mobile client device, comprising: means for first providing a first audio signal at a first audio

6    volume level to a user, the first audio volume level being selectable by the user; means for, while

7    the first audio signal is provided to the user at the first audio volume level, providing a second audio

8    signal at a second audio volume level to the user, the second audio volume level being variably

9    controlled by the mobile client device based on said first audio volume level, the second audio

10   volume level being non-intrusively lower than the first audio volume level initially; and means for,

11   while the first and second audio signals are provided to the user, incrementally increasing, by an

12   increasing increment, the second audio volume level from the initial non-intrusive lower volume

13   level to a discernable volume level higher than the first audio volume level until the user responds

14   to the second audio signal."

15        73.     Apple does not infringe Claim 10 of the '699 Patent at least because the Apple

16   Accused Devices and Apple Accused Software do not meet or embody at least the following

17   limitations as used in the claimed inventions: "the second audio volume level being variably

18   controlled by the mobile client device based on said first audio volume level, the second audio

19   volume level being non-intrusively lower than the first audio volume level initially" and "means

20   for, while the first and second audio signals are provided to the user, incrementally increasing, by

21   an increasing increment, the second audio volume level from the initial non-intrusive lower volume

22   level to a discernable volume level higher than the first audio volume level until the user responds

23   to the second audio signal."

24        74.     No third party infringes any claim of the '699 Patent by using the Apple Accused

25   Devices or Apple Accused Software. Apple has not caused, directed, requested, or facilitated any

26   such infringement, much less with specific intent to do so. Apple had no knowledge of the '699

27   Patent before December 18, 2025, nor any knowledge of alleged infringement of the '699 Patent

28   by the Apple Accused Devices or Apple Accused Software, before Cloud Controls filed the Carrier

Cases. For at least the reasons explained above, the Apple Accused Devices and Apple Accused Software and the use of the Apple Accused Devices and Apple Accused Software do not directly infringe the '699 Patent. The Apple Accused Devices and Apple Accused Software are not designed for use in any combination which infringes any claim of the '699 Patent. To the contrary, each has substantial uses that do not infringe any claim of the '699 Patent and are not accused by Cloud Controls of infringing the '699 Patent. For example, the Apple Accused Devices can be used for phone calls, texts, browsing the Internet, and streaming content.

75. Thus, there exists an actual controversy between Apple and Cloud Controls with respect to Apple's alleged infringement of the '699 Patent. Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '699 Patent.

76. Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '699 Patent.

**SIXTH COUNT**
**(Declaration of Noninfringement of U.S. Patent No. 10,025,552)**

77. Apple restates and incorporates by reference the allegations in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

78. Cloud Controls claims to own all rights, title, and interest in and under the '552 Patent. The '552 Patent is titled "Selective Locking of Input Controls of a Portable Media Player." The '552 Patent issued on July 17, 2018 from U.S. Patent Application No. 14/463,611, filed on August 19, 2014. The '552 Patent lists Jonathan Nelson as the sole inventor and Varia Holdings LLC as the initial, sole assignee. A true and correct copy of the '552 Patent is attached hereto as Exhibit 6.

79. Apple does not directly or indirectly infringe any claim of the '552 Patent, either literally or under the doctrine of equivalents. For example, Claim 1 of the '552 Patent recites: "An apparatus, comprising: a selection input to receive individual selections of one or more control components out of a plurality of control components of the apparatus during a control component configuration for an individual operational mode of a plurality of operational modes, the individual selections of the one or more control components to remain enabled when the apparatus is in a

locked state during the individual operational mode such that the apparatus is to continue to be able to receive input from the individual selections of the one or more control components when the apparatus is in the locked state during the individual operational mode and not able to receive input from the individual selections of the one or more control components when the apparatus is in the locked state during another individual operational mode of the plurality of operational modes; a first control component of the plurality of control components; a second control component of the plurality of control components; and a control selection component to cause the apparatus to be switched between a locked state and an unlocked state upon activation of the control selection component, wherein: while the apparatus is in the locked state during the individual operational mode with the first control component having been selected via the selection input, but not the second control component, the apparatus is prevented from acting on any received input from the second control component but is allowed to act on any received input from the first control component, while the apparatus is in the locked state during the other individual operational mode with the first control component having been selected via the selection input, but not the second control component, the apparatus is prevented from acting on any received input from the first control component and from the second control component, and while the apparatus is in the unlocked state, the apparatus is allowed to act on any received input from the first control component and from the second control component, regardless of whether the first or second control component has been selected via the selection input."

80.    Apple does not infringe Claim 1 of the '552 Patent at least because the Apple Accused Devices and Apple Accused Software do not meet or embody at least the following limitations as used in the claimed inventions: "a selection input to receive individual selections of one or more control components out of a plurality of control components of the apparatus during a control component configuration for an individual operational mode of a plurality of operational modes, the individual selections of the one or more control components to remain enabled when the apparatus is in a locked state during the individual operational mode such that the apparatus is to continue to be able to receive input from the individual selections of the one or more control components when the apparatus is in the locked state during the individual operational mode and

not able to receive input from the individual selections of the one or more control components when the apparatus is in the locked state during another individual operational mode of the plurality of operational modes;" "a first control component of the plurality of control components;" "a second control component of the plurality of control components;" "a control selection component to cause the apparatus to be switched between a locked state and an unlocked state upon activation of the control selection component"; "while the apparatus is in the locked state during the individual operational mode with the first control component having been selected via the selection input, but not the second control component, the apparatus is prevented from acting on any received input from the second control component but is allowed to act on any received input from the first control component"; "while the apparatus is in the locked state during the other individual operational mode with the first control component having been selected via the selection input, but not the second control component, the apparatus is prevented from acting on any received input from the first control component and from the second control component"; and "while the apparatus is in the unlocked state, the apparatus is allowed to act on any received input from the first control component and from the second control component, regardless of whether the first or second control component has been selected via the selection input."

81.     No third party infringes any claim of the '552 patent by using the Apple Accused Devices or Apple Accused Software. Apple has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. Apple had no knowledge of the '552 Patent before December 18, 2025, nor any knowledge of alleged infringement of the '552 Patent by the Apple Accused Devices or Apple Accused Software, before Cloud Controls filed the Carrier Cases. For at least the reasons explained above, the Apple Accused Devices and Apple Accused Software and the use of the Apple Accused Devices and Apple Accused Software do not directly infringe the '552 Patent. The Apple Accused Devices and Apple Accused Software are not designed for use in any combination which infringes any claim of the '552 Patent. To the contrary, each has substantial uses that do not infringe any claim of the '552 Patent and are not accused by Cloud Controls of infringing the '552 Patent. For example, the Apple Accused Devices can be used for phone calls, texts, browsing the Internet, and streaming content.

82.     Thus, there exists an actual controversy between Apple and Cloud Controls with respect to Apple's alleged infringement of the '552 Patent.  Accordingly, declaratory judgment is appropriate and necessary to determine the parties' respective rights regarding the '552 Patent.

83.     Apple seeks a judicial declaration that Apple does not directly or indirectly infringe any claim of the '552 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Apple requests that judgment be entered:

A.     Declaring that judgment be entered in favor of Apple against Cloud Controls on Apple's claims;

B.     Declaring that Apple does not infringe, directly or indirectly, the Patents-in-Suit, either literally or under the Doctrine of Equivalents;

C.     Declaring that Apple does not induce infringement of the Patents-in-Suit;

D.     Declaring that Apple does not contribute to infringement of the Patents-in-Suit;

E.     Finding that this is an exceptional case under 35 U.S.C. § 285;

F.     Awarding Apple its costs and attorneys' fees in connection with this action;

G.     Awarding Apple such further and additional relief as the Court deems just, equitable, and proper.

1

2                                    **<u>DEMAND FOR JURY TRIAL</u>**

3          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Apple respectfully

4    demands a trial by jury on all issues triable by jury.

5    DATED: February 20, 2026              DESMARAIS LLP

6

7                                  By:      *s/ John M. Desmarais*

8                                          John M. Desmarais
                                           *Attorney for Apple Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                        APPLE'S COMPLAINT FOR DECLARATORY JUDGMENT