United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

APPLE, INC.,

Plaintiff,

v.

CLOUD CONTROLS LLC,

Defendant.

Case No. 26-cv-01510-PCP

**ORDER RESOLVING PROTECTIVE ORDER DISPUTES**

Re: Dkt. No. 76

In this patent case, plaintiff Apple, Inc., and defendant Cloud Controls LLC agree that a protective order is needed but disagree as to many of its terms. The parties have submitted a joint letter brief outlining their disputes and a proposed protective order noting their competing proposals. The parties have adopted as their point of departure the Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("Model Order").[1]

The disputes here are largely unrelated to the public right of access that generally underlies protective order disputes. *See, e.g.*, *Fierro Cordero v. Stemilt AG Servs., LLC*, 142 F.4th 1201, 1207 (9th Cir. 2025). Rather, the parties disagree as to how protected material in this case should be stored and accessed, and who among the parties' attorneys, experts, and consultants should be entitled to such access. Apple advocates for stringent restrictions and Cloud Controls generally objects to the burden and redundancy of those restrictions.

While good cause exists for some of the additional restrictions that Apple seeks, many of Apple's proposed provisions unnecessarily complicate the protective order with redundant protections and auxiliary dispute resolution procedures. Moreover, as to many of the most

[1] https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/model-protective-orders

burdensome proposed restrictions, Apple has not carried its burden to demonstrate the specific prejudice or harm that will occur in their absence.

The Court addresses each dispute in turn.

## I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in discovery, including by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

In a patent case, the Model Order "shall govern discovery unless the Court enters a different protective order." Patent L.R. 2-2. The Model Order is "deemed to be presumptively reasonable in most cases." *See Rabin v. Google LLC*, 702 F. Supp. 3d 880, 882 (N.D. Cal. 2023). Although the Court may deviate from the presumptively reasonable default, the party seeking the modification bears the burden to "'show good cause'" why the modification is warranted "by demonstrating harm or prejudice that will result" in its absence. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (quoting *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)). "For good cause to exist, the party seeking protection bears the burden of showing *specific* prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210–11 (emphasis added). And where the parties agree to deviate from the Model Order but disagree as to the degree of deviation and additional restriction, the party advocating for the additional restriction "bears the burden of showing prejudice or harm that will result if the less restrictive [provision] … is imposed." *Rabin*, 702 F. Supp. 3d at 881.

## II. ANALYSIS

### A. Export Control (Sections 5.3, 8.2(c), 8.3(b))

Cloud Controls proposes that the parties adopt the Model Order's optional provision on export control, which affirms the parties' obligations to abide by generally applicable export laws and provides that the producing party shall identify whether protected material is subject to any export control. Model Order ¶ 14.3.

Apple's export control proposal goes considerably further. Apple proposes that all

protected material should be stored in the United States and that no protected material should be exported outside of the United States or Canada, whether subject to export control or not. PPO ¶ 5.3. No protected material would be releasable to "any foreign national," unless the foreign national were retained as an expert or outside counsel of record. *Id.* ¶¶ 5.3, 8.2(a), 8.2(c). Protected material (except for source code) would be accessible outside the United States or Canda only through a view-only system hosted in the United States. *Id.* ¶ 5.3. This view-only access would be allowed only upon written request and approval of the producing party. *Id.* The parties otherwise agree that all protected material may be taken outside of the United States and Canada if reasonably necessary for a deposition. *Id.*

As to these myriad departures from the Model Order, Apple has not met its burden. Apple does not explain at all why export restrictions are necessary for protected material not subject to the export control laws. Nor does Apple explain why these additional burdens are necessary in addition to the other dedicated provisions of the protective order that specifically deal with data security. *See infra* Section II.D. With an information management system, multi-factor authentication, and encryption in place, *id.*, it is not clear why the parties should not be allowed to access non-export-restricted protected material abroad. And the arbitrariness of the proposed restriction is further demonstrated by the broad exception that Apple accepts for foreign depositions. PPO ¶ 5.3

As for the restrictions on foreign nationals, the protective order already significantly limits the types of individuals who may receive protected material, whether United States citizens or not. PPO ¶¶ 8.2–8.4. Apple has not explained why, within this limited group, foreign national counsel of record or experts may receive protected material, but not, for instance, foreign national court personnel, court reporters, mock jurors, or witnesses. *Id.* ¶ 8.2.

The Court acknowledges that other courts have agreed to export control restrictions similar to those that Apple proposes. *See, e.g.*, *Withrow Networks, Inc. v. Google, LLC*, No. 24-CV-03203-PCP (VKD), 2025 WL 948120, at *3 (N.D. Cal. Mar. 28, 2025); *Floyd v. Amazon.com Inc.*, No. C22-1599-KKE, 2023 WL 8701667, at *2–3 (W.D. Wash. Dec. 15, 2023). But those decisions do not explain why such restrictions are necessary. *Iron Tribe Fitness v. Meta Platforms,*

*Inc.*, No. 25-CV-03281-CRB (AGT), 2026 WL 2351858, at *1 (N.D. Cal. Aug. 13, 2026) (rejecting territorial restrictions, except as to source code, because requesting party had not "demonstrated that tighter controls are necessary" relative to the Model Order).

Moreover, "it is not enough that proposed restrictions are not 'unreasonable or unusual,' or that they may have been imposed in other cases. It is [*Apple*] that must specifically show that it will be prejudiced or harmed in *this* particular case if its proposed restrictions are *not* adopted. This [Apple] has not done." *Rabin*, 702 F. Supp. 3d at 882. In the absence of such justification, the Court declines to impose unnecessary expense and complication.

Accordingly, the Court rejects Apple's proposed export control provision, and the parties shall instead adopt the Model Order's optional provision on export control, paragraph 14.3.

**B. Competitive Decision-Makers (Sections 8.3(a), 8.4(a))**

The parties have agreed to some modifications of the Model Order's disclosure provisions, restricting the types of in-house personnel and experts who may receive protected material and expanding access to some other personnel. *Compare* PPO ¶¶ 8.2–8.4 *with* Model Order ¶ 7.2. Neither party objects to these additions and they do not impose any discernibly significant burdens.

But Apple proposes, and Cloud Controls opposes, a further deviation. Apple proposes that certain protected material should not be disclosed to outside counsel of record if such counsel is "involved in competitive decision making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party." PPO ¶¶ 8.3(a), 8.4(a). Competitive decision making refers to "advice and participation in any or all of [a] client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel*, 730 F.2d at 1458 n.3. Apple suggests this restriction is necessary to prevent the parties from using protected material in future lawsuits. Apple also notes that outside counsel and clients in patent cases may have related business interests and implies that protected material may be leveraged to further those interests. Otherwise, Apple identifies no specific harm that its proposal seeks to curtail.

Apple has not carried its burden to explain why the additional complications and burdens

United States District Court
Northern District of California

of this provision are necessary. The parties already agree that protected material disclosed in this case "shall be used solely for this case" and not for "any business or competitive purpose or function." PPO ¶ 5.1.; *see also infra* Section II.F. And the parties agree that recipients of the most confidential protected material in this action cannot be involved in applying for or acquiring patents related to the patents at issue here. PPO ¶ 5.2.

Moreover, in the absence of any "showing of necessity," *Rabin*, 702 F. Supp. 3d at 882, the Court declines to limit the recipients of protected material by way of a vague and inadministrable test. Competitive decision making is broadly defined, and it seems likely that outside counsel in patent cases would be involved in at least some competitive business decisions.

The Court accordingly rejects Apple's proposed additions to sections 8.3(a) and 8.4(a).

**C. Objections to Experts (Section 10(e))**

The parties have agreed on a process by which they must notify each other prior to the disclosure of protected material to certain in-house counsel and outside experts and consultants, as well as a process for objecting to disclosure within fourteen days of such notice. PPO ¶¶ 10(a)–(d).[2] Without objection, or if the objection is overruled, the protective order provides that the relevant person will have indefinite and ongoing access to protected material. *Id.* ¶ 10(b). This process, including the fourteen-day deadline for objections, builds on Model Order paragraph 7.4

Further deviating from the Model Order, however, Apple proposes that the parties should be able to object to continued access after the initial fourteen-day period. *Id.* ¶ 10(e). If such a later objection were sustained, the individual would retain access to previously disclosed protected material but would not be able to receive further material. *Id.* Apple argues this is necessary because the parties' experts and consultants may take roles with Apple's competitors or adversaries during this litigation. Cloud Controls objects that this would make the initial deadlines meaningless, leave the parties unable to rely on their experts, and be redundant with the provisions specifying that experts and consultants cannot have roles with competitors.

The Court agrees that Apple's proposed addition is redundant and unnecessary. If an expert

[2] The proposed protective order also specifies that this process applies to the court and its personnel. PPO ¶¶ 8.3(c), 10(a). The parties shall strike this restriction.

United States District Court
Northern District of California

or consultant takes a role with a competitor, that person would no longer be qualified to receive additional protected material under the other terms of the proposed protective order. PPO ¶¶ 8.2(c), 8.3(b), 8.4(b). And Apple's proposal does not seek to limit access to previously disclosed protected material. *Id.* ¶ 10(e).

Accordingly, the Court rejects Apple's proposed paragraph 10(e).

**D. Data Security (Section 15)**

**1. Preventive Measures - Subsection (a)**

Apple proposes that each party must implement a stringent set of data security measures to safeguard protected material. This includes 1) an "information management system," including "administrative, physical, and technical safeguards, and network security and encryption technologies," which must comply with a published data security standard; 2) multi-factor authentication for "any access" to protected materials; and 3) encryption of all protected materials both in transit and at rest. PPO ¶ 15(a). The Court considers each proposal in turn.

**a. Information Management System**

Given the sensitive information at issue in this patent litigation, and given the uptick in data security incidents at law firms to which Apple points, the Court agrees with Apple that there is good cause for the protective order to provide more specific data security requirements than the Model Order's generalized admonishment to store information "in a secure manner." Model Order ¶ 7.1. Cloud Controls objects that Apple does not define an "information management system," but the proposal defines such a system as a set of "safeguards" and "technologies" that are governed by "written policies and procedures." PPO ¶ 15(a). That is, as proposed by Apple, an information management system is a framework for data security rather than a rigidly defined system. The Court finds that it is not overly burdensome for the parties to write down their data security policies and procedures and implement some form of network security and encryption.

Apple also proposes, however, that the parties' information management systems must conform to the specifications of a published data security standard.[3] But Apple has not explained

[3] Apple proposes that the parties may choose one of the following standards in implementing the information management system: "(a) the International Organization for Standardization's 27001

why the listed standards in the proposal are necessary, or why it is necessary or administrable for the parties to implement an unspecified "cybersecurity framework" of another "widely recognized industry or government." *Id.* And in at least one other case involving "Apple's proposed protocols," parties litigating opposite Apple apparently "spent 250 hours over the course of eight weeks to implement the protocols." *Affinity Credit Union v. Apple Inc.*, No. 22-CV-04174-JSW, 2024 WL 1344211, at *2 (N.D. Cal. Mar. 29, 2024).

On this score, the Court finds it informative that in other cases in this district, parties litigating opposite Apple have agreed to implement information management systems but courts have declined to require that such systems adhere to specific "strict security protocols." *Id.*; *Kapil v. Apple Inc.*, No. 24-CV-09304-NW (VKD), 2026 WL 2352768, at *1–2 (N.D. Cal. Aug. 13, 2026). This strikes an appropriate balance between Apple's interest in reasonable security measures and Cloud Control's interest in avoiding unnecessary burden and expense. *See Rabin*, 702 F. Supp. 3d at 882 (noting that protective orders should not "impose substantial burdens on other parties" by way of "complicated internal mechanisms").

Accordingly, the protective order will reflect that the parties shall implement an information security management system to safeguard protected materials, including reasonable and appropriate administrative, physical, and technical safeguards, and network security and encryption technologies governed by written policies and procedures. That is "more than sufficient." *Affinity Credit Union*, 2024 WL 1344211, at *2.

**b. Multi-Factor Authentication**

Apple also proposes that "any access" to protected material should require multi-factor authentication. PPO ¶ 15(a). But "Apple's proposed language of 'for any access' is vague, and it is unclear how the Court would enforce the provision. It is unclear to the Court if, for example, authentication would be required when opening every draft of a brief or letter, or if authentication when logging into one's computer is sufficient." *Affinity Credit Union*, 2024 WL 1344211, at *2.

---

standard; (b) the National Institute of Standards and Technology's (NIST) 800-53 standard; (c) the Center for Internet Security's Critical Security Controls; or (d) the most recently published version of another widely recognized industry or government cybersecurity framework." PPO ¶ 15(a).

United States District Court
Northern District of California

Nor does Apple explain why document-specific authentication is necessary.

Here again, the Court finds it instructive that Apple has previously agreed to a more clearly defined and less burdensome compromise: requiring multi-factor authentication on a "device-specific basis," rather than a "document-specific basis." *Kapil*, 2026 WL 2352768, at *2; *see also Affinity Credit Union*, No. 22-CV-04174-JSW, Dkt. No. 74, at 11 (N.D. Cal. Mar. 29, 2024) (adopting plaintiffs' proposal of device-level multi-factor authentication). Cloud Controls objects to the burden of implementing any multi-factor authentication but does not explain why it would be burdensome. Notwithstanding this vague objection, the Court finds that multi-factor authentication is a common-sense and widely employed security measure.[4]

Accordingly, the protective order will reflect that the parties shall implement multi-factor authentication for access to protected materials, and that such authentication shall be implemented on a device-specific basis at minimum.

**c. Encryption**

Apple proposes that the parties should be required to use encryption to store and transmit protected material. PPO ¶ 15(a). Cloud Controls cursorily objects to the encrypted storage requirement as burdensome but does not appear to object to encrypted transfer.

The Court concludes that it would be redundant to separately require encrypted storage of protected material in light of the above-discussed requirement that the parties' information management systems must employ encryption. As to encrypted file transfer, given that encrypted file transfer technologies are widely available and affordable, and given that unencrypted transfer would appear to defeat the benefits of encrypted storage, the Court adopts Apple's proposal as reasonable and supported by good cause.

**2. Breach Protocols - Subsections (b)–(e)**

Apple proposes a detailed set of procedures and obligations that would be triggered in the event of a data breach, defined as "any unauthorized access, use, or disclosure of Protected Materials or devices containing Protected Materials." PPO ¶ 15(b). Cloud Controls contends that a

---

[4] *What is Multifactor Authentication (MFA) and How Do You Enable It?*, National Cybersecurity Alliance, https://www.staysafeonline.org/articles/multi-factor-authentication.

mutually agreed-upon provision from the Model Order already accounts for data breaches, but Model Order paragraph 12 (paragraph 13 in the proposed protective order) pertains to "unauthorized disclosure," and does not appear to contemplate malicious third-party action.

Given the sensitive information at issue in this litigation, the cascading risks of further breaches after an initial breach, and the fact that it is generally preferable to put procedures in place for unhappy occurrences before they occur, the Court agrees that there is good cause to put some data breach protocols in place. The Court is concerned, however, that some of Apple's proposed provisions "would invite satellite disputes unrelated to resolution of this action," *Affinity Credit Union*, 2024 WL 1344211, at *3, and that some others would be redundant with other agreed upon provisions.

Specifically, the Court agrees with Cloud Controls that it is neither necessary nor administrable to require the parties to help satisfy each other's "legal, contractual, or other obligations," given the other proposed provisions requiring informal cooperation. PPO ¶ 15(b). And it is neither appropriate nor necessary to require the parties to "submit" to automatic formal "discovery" in the event of a breach, given that Apple's proposed provision otherwise provides that the parties shall "promptly comply with Producing Party's reasonable request(s)." *Id.* ¶¶ 15(c)–(d). "If this informal discovery is insufficient, the Producing Party can seek leave to conduct formal discovery from the Court." *Affinity Credit Union*, 2024 WL 1344211, at *3. For similar reasons, the Court also concludes that proposed subsection (e)—requiring automatic disclosure of policies and procedures relating to the compromised information management system—is unnecessary.

Cloud Controls' remaining objection is unsubstantiated. Cloud Controls takes issue with proposed subsection (d), which provides that in the event of a breach, the parties "shall meet and confer in good faith regarding any adjustments that should be made to the discovery process and discovery schedule." PPO ¶ 15(d). The provision also lists possible corrective actions to be discussed at the conference, including a stay or extension of discovery and a severance of access to protected material for entities affected by the breach. *Id.* Cloud Controls objects not to the meet and confer requirement but to the possible corrective actions listed in the provision. But

"[b]ecause [Apple's] proposal requires the parties to meet and confer about whether actions are appropriate, Plaintiff will have an opportunity to negotiate the appropriate course of action as needed and the Court finds no reason to exclude a non-exhaustive list from this section." *Floyd*, 2023 WL 8701667, at *2.

Accordingly, the protective order shall largely adopt Apple's proposal, except that it shall not require the parties to 1) help satisfy each other's "legal, contractual, or other obligations"; 2) automatically submit to "reasonable discovery concerning the Data Breach"; or 3) automatically submit copies of data security policies and procedures preceding the breach.

**3. Dispute Resolution - Subsection (f)**

Apple proposes that the parties should meet and confer about potential violations of the protective order and then "within 10 business days, bring the dispute to the Court," where the challenging party would "bear the burden of demonstrating a violation." PPO ¶ 15(f). Apple has not explained why this auxiliary dispute procedure is necessary or why it makes sense to create a specific procedure for data security disputes. *Id.* Disputes regarding compliance with or implementation of a protective order are subject to ordinary discovery dispute resolution procedures. *Withrow Networks*, 2025 WL 948120, at *3.

Rather than create auxiliary dispute resolution procedures, the protective order in this case shall specify that all disputes concerning the protective order, including as to data security and breaches, shall be resolved according to the ordinary discovery dispute procedures provided in the standing order of the judge presiding over discovery.

**E. Filing Highly Confidential Materials (Section 17.3)**

The parties have agreed to the Model Order's provision regarding the filing of protected material, paragraph 14.4. PPO ¶ 17.3 Apple wants to supplement the model provision with an additional rule: In the event that a party moves to file certain protected material under seal and the Court denies the sealing motion, the parties would be required to meet and confer as to an unspecified "alternative procedure" for submitting the material to the Court, subject to judicial intervention if the parties are not able to agree. *Id.* Apple argues that this supplemental procedure is "necessary to protect Apple's most sensitive information from public disclosure." Letter Brief,



United States District Court
Northern District of California

Dkt. No. 76, at 4.

There is, of course, already a procedure in place to protect Apple's "sensitive information from public disclosure." *Id.* Civil Local Rule 79-5 provides the process and standard for limiting the public disclosure of information through sealing motions. And the parties may not stipulate to keep court files off the public docket; that decision belongs to the Court and is subject to exacting legal standards. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Nor may the parties simply refer to a protective order provision to establish that a file should be sealed. *See* Civil L.R. 79.5(c). Because Apple has not established why the sealing procedures in the Local Rules and associated case law are insufficient to protect its "sensitive information," the Court rejects Apple's proposed provision 17.3.

**F. Application to Successors (Section 17.4)**

Apple proposes that the protective order should "be binding upon the Parties hereto, their attorneys, and their successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and experts, and any persons or organizations over which they have direct control." PPO ¶ 17.4. Apple's sole articulated justification for this provision is to prevent Cloud Controls from using confidential information from this action in future suits. Letter at 4–5. The parties have already agreed, however, on a provision ensuring that "[a]ll Protected Material shall be used solely for this case." PPO ¶ 5.1. Accordingly, Apple has not carried its burden to explain why this expansive additional provision is necessary, and the Court rejects Apple's proposed provision 17.4 as redundant.

**G. Other Modifications**

The parties have agreed on other modifications to the Model Order that they do not address in their letter brief. The updated stipulated protective order shall reflect the following changes to these modifications, identified by the paragraph in the instant proposed order (Dkt. No. 76):

- Paragraph 3: Strike the reference to the nonexistent "Section 5.7."
- Paragraph 6.3(c): The identification of protected testimony shall be made on the record, as provided in Model Order ¶ 5.2(b).

- Paragraph 7.2: The parties shall be required to meet and confer in a voice-to-voice dialogue, as provided in Model Order ¶ 6.2.
- Paragraph 9(a): Strike "8.3(c)," which purports to limit disclosure to the court and its personnel.

## III. CONCLUSION

Within fourteen days of the filing of this order, the parties shall submit a revised proposed protective order that conforms to this order. The Clerk of Court is directed to refer this case to a magistrate judge for discovery, and the parties shall address all future discovery disputes to the assigned magistrate judge.

**IT IS SO ORDERED.**

Dated: November 23, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California